**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| THI NHO DANG (d/b/a "HAMIEW"),<br><br>*Plaintiff,*<br><br>v.<br><br>THE INDIVIDUALS, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 26-405<br><br>Hon. Michael J. Truncale |

**PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND AN ORDER RESTRAINING THE TRANSFER OF ASSETS**

Plaintiff Thi Nho Dang (d/b/a "HAMIEW") (the "Plaintiff" or "HAMIEW"), by undersigned counsel and pursuant to 15 U.S.C. §1116, 17 U.S.C. §502, Rule 65 of the Federal Rules of Civil Procedure, and The All Writs Act, 28 U.S.C §1651(a), respectfully moves on an *ex parte* basis for entry of a temporary restraining order, an order restraining transfer of assets, and upon expiration of the temporary restraining order, a preliminary injunction against Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on Schedule A (Dkt. #8) (collectively, the "Defendants"). In support thereof, Plaintiff respectfully states as follows:

## I. INTRODUCTION

The entry of a temporary restraining order on an expedited and *ex parte* basis is necessary because the Plaintiff needs to issue discovery on the online payment platforms to discover the actual identities of the Defendants and to avoid the likely transfer of U.S.-based assets to China, where the vast majority of Defendants are located, which would effectively deny Plaintiff recover the damages caused by the Defendants' intentional and well-orchestrated violation of the Plaintiff's intellectual property rights in this Case. Plaintiff will serve Defendants with all pleadings once information identifying the actual named and

locations of the Defendants' webstores is provided by the online payment platforms, including Amazon, eBay, TikTok, and Walmart (the "Marketplaces").

Plaintiff has provided this Court with evidence demonstrating the following: (1) Defendants are engaged in the advertising, offering for sale, and sale of counterfeit and infringing versions of the Copyrighted Works and, in some cases, the Mark[1]; and (2) Defendants accomplish their sales of counterfeit and infringing goods via the Internet through the use of Webstores and online advertising targeting consumers located in Texas, including Meta (a/k/a Facebook), Alphabet Inc. (a/k/a Google and YouTube), TikTok, and X Corp. (f/k/a "Twitter"), among others. *See* Affidavit of Patrick M. Jones (the "Jones Aff."), a copy of which is attached hereto as Exhibit A, at ¶5 (noting that Plaintiff and its counsel reviewed each of the Defendants' webstores and confirmed that Defendants targeted customers located in the State of Texas, thus placing their Counterfeit Guides in the "stream of commerce").[2] Based on this evidence, Plaintiff's Complaint alleges claims for copyright and trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and trademark dilution.

## II. BACKGROUND

The factual allegations of the Complaint, supported by the Plaintiff's Verification of Complaint (Dkt. #7) and the Jones Aff. are incorporated herein as if fully set forth herein.

### A. Plaintiff's Intellectual Property Rights are Protectable Interests.

Plaintiff is the owner of the federally registered trademarks and copyrights identified in Exhibit A to the Complaint (collectively, the "IP"). (Dkt. #1-1.) The Copyrighted Works and the Mark are used in connection with the design, marketing, and distribution of high-quality goods defined in the Complaint as

---

[1] The Complaint alleges that fifty-seven (57) Webstores infringed Plaintiff's Copyrighted Works; seven (7) also infringed its Mark. Because the relief requested herein is appropriate in copyright infringement cases, as well as trademark infringement cases, this Motion will focus on the Defendants' copyright infringement.

[2] Capitalized terms used herein, but not defined herein, shall have the meanings given them in the Complaint.

the Plaintiff's "Dietary Guides". *See* Complaint, at ¶4. Plaintiff has extensively used, advertised, and promoted the Copyrighted Works and the Mark in the United States, and has carefully monitored and policed the use of the IP. *Id.*, at ¶¶11-13, 17-18. As a result of Plaintiff's efforts, the IP has acquired a favorable reputation, goodwill, and an amount of fame in the consumer market, especially among individuals suffering from diabetes and other health conditions that often go underserved. *Id.*, at ¶¶11-12.

**B. Defendants Knowingly Infringed Plaintiff's IP.**

Defendants do not have, nor have they ever had, the right or authority to use the IP for any purpose. *See id.*, at ¶¶16, 22. Defendants have, nonetheless, promoted, advertised, distributed, sold and/or offered for sale, through their respective Seller IDs, Counterfeit Guides bearing the Copyrighted Works and, in some cases as indicated on Schedule A, the Mark, infringing the Plaintiff's IP without authorization. *Id.*

As part of its ongoing investigation regarding the sale of Counterfeit Guides, Plaintiff and its counsel accessed Defendants' webstores operating under each of the Seller IDs, confirmed that they targeted and were willing and able to sell to customers located in the State of Texas, and initiated "test purchases" of Counterfeit Goods to confirm that the Defendants were distributing guides bearing counterfeits of, at least one of the Copyrighted Works and/or the Mark. *See* Jones Aff., at ¶8. In sum, Defendants' Internet activities infringe on Plaintiff's registered, protectable, intellectual property rights. The Seller IDs and associated payment accounts are a substantial part of the means by which Defendants further their scheme and cause harm to Plaintiff.

## III. ARGUMENT

**A. A Temporary Restraining Order, Appropriately Limited in Scope, is Necessary to Prevent Immediate and On-Going Harm to Plaintiff and the HAMIEW Brand.**

Rule 65(b) of the Federal Rules of Civil Procedure provides, in part, that a temporary restraining order may be granted on an expedited and *ex parte* basis when it appears from the specific allegations supported by a verified complaint or shown declaration or affidavit "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R.

Civ. P. 65(b). Courts in this District have repeatedly recognized that *ex parte* relief is justified against counterfeiters whose very businesses are built around the deliberate misappropriation of intellectual property rights recognized under established U.S. law. *See e.g.*, *Those Characters from Cleveland, LLC v. The Individuals, Partnerships, and Unincorporated Assns. Identified on Schedule A*, Case No. 25-320 (E.D. Tex. Aug. 22, 2025) (Dkt. #18) (trademark infringement); *Animaccord Ltd. v. The Individuals, Partnerships, and Unincorporated Associations identified in the caption, which are set forth on Schedule "A"*, Case No. 25-489 (E.D. Tex. May 8, 2025) (Dkt. #22) (copyright and trademark infringement) ("*Animaccord I*"); *Multipla Ltd. v. The Individuals, Business Entities, And Unincorporated Associations Identified on Exhibit A*, Case No. 25-622, (E.D. Tex. June 10, 2025) (Dkt. #14) (copyright). Copies of the relevant Complaints and Orders granting similarly-situated plaintiffs' motions for *ex parte* temporary restraining orders are attached hereto as <u>Exhibit B</u>.

Further, as Judge J. Campbell Barker recently recognized, when considering a request to enter a TRO on an *ex parte* basis, the threat that defendants will "take the money and run" is "is a substantial concern, especially as to foreign manufacturers whose operations may be designed around limiting their exposure to U.S. remedies for infringement." *See Liu v. The Partnerships and Unincorporated Associations Identified in Schedule A*, Case No. 25-1220 (E.D. Tex. Nov. 6, 2025) (Dkt. #18) (seeking TRO based on copyright infringement), a copy of which is attached as <u>Exhibit C</u> ("<u>Liu</u>"). Concerns regarding potential prejudice to non-parties is lessened, however, when the rights-holder limits the scope of the TRO to infringing products, permitting the alleged infringer to continue selling non-infringing products. *Id.* That is precisely the narrow, tailored relief that Plaintiff seeks in this Case.

**B. Plaintiff's has Presented Evidence Supporting the Requirements for Issuing a Temporary Restraining Order.**

In this Circuit, the standard for obtaining a temporary restraining order, like a preliminary injunction, requires establishing four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the temporary restraining order is denied;

(3) that the threatened injury outweighs any damage that the temporary restraining order might cause the defendant; and (4) that the temporary restraining order will not disserve the public interest. *See Whole Woman's Health v. Paxton*, 264 F. Supp. 3d 813, 818 (W.D. Tex. 2017) (citing *Jackson Women's Health Org. v. Currier*, 760 F.3d 338, 452 (5th Cir. 2014)).

**1. Plaintiff is Likely to Succeed on its Copyright Infringement Claim.**

To prevail on a copyright infringement claim, a plaintiff must show (1) ownership of a valid copyright and (2) unauthorized copying. *Peel & Co., Inc. v. The Rug Market*, 238 F.3d 391, (5th Cir. 2001). Plaintiff's ownership and the validity of its copyright is presumed through its registration of the USCO. 17U.S.C§410(c); *Elvis Presley Enters. v. Capece,* 141 F.3d 188, 194 (5th Cir. 2008); Norma Ribbon & Trimming, Inc. v. Little, 51 F.3d 45, 47 (5th Cir. 1995. Plaintiff has provided the Court with specific, detailed instances of each of the Defendants' unauthorized copying of its Copyrighted Works. *See* Dkt. #8 (Evidence of Infringement). Defendants have never had the right or authority to use the Copyrighted Works. Complaint, at ¶22. Therefore, Plaintiff has presented this Court with evidence that it is likely to prevail on its copyright infringement claim against each of the Defendants listed on Schedule A, and the first requirement of obtaining a TRO is clearly satisfied.

**2. Plaintiff has Suffered and Continues to Suffer Imminent and Irreparable Harm to its Reputation and has No Adequate Remedy at Law.**

"An irreparable injury is one that cannot be undone by monetary damages or one for which monetary damages would be especially difficult to calculate." *Spartans Composites, LLC v. Signature Systems Group, LLC*, Case No. 4:24-cv-609, 2026 WL 25449, at *5 (E.D. Tex. Jan. 5, 2026). In addition, "the mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'" *Id.* (quoting *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) ( Irreparable harm is present where there is no adequate remedy at law, such as monetary damages). An injury may also be considered "irreparable" if an injunction is necessary "to protect a remedy, including a damages remedy." *Productos*

*Carnic, S.A. v. Cent. Amer. Beef & Seafood Trading Co.*, 621 F.2d 683, 686–87 (5th Cir. 1980) ("[E]ven were [plaintiff's] remedy limited to damages, an injunction may issue to protect that remedy.").

In this Case, Plaintiff has alleged two types of irreparable harm, both of which have occurred and are on-going: (i) harm to the Plaintiff's reputation and the goodwill generated by the HAMIEW brand, and (ii) lack of a meaningful remedy against online retailers that are beyond this Court's jurisdiction and that can easily transfer all of their U.S.-based assets overseas. Complaint, at ¶¶20-21, 36, 63, 78. The Defendants promote, advertise, sell, and offer for sale goods bearing or using counterfeits or infringements of the Plaintiff's Copyrighted Works and, in some cases, the Mark, via their Webstores using at least the Seller IDs, source the counterfeit products from common manufacturers located exclusively, based on Plaintiff's investigation, in China, and structure their organizations in "cartel-like" organizations that can be quickly liquidated when their counterfeiting activities are discovered. *See* Jones Aff., at ¶¶9-10. Absent entry of a TRO, Defendants can and will significantly alter the *status quo* before the Court can determine the parties' respective rights. The Defendants can easily transfer their sole U.S.-based assets – funds held in their online accounts – by routinely "sweeping" these funds into offshore accounts, including accounts in China that are effectively immune from enforcement. In addition, Defendants in "Schedule A" cases manipulate sales, advertising data, and online content to "re-create" reality and, at a minimum, make it exceedingly difficult for legitimate rights' owners to enforce any judgment for copyright infringement. *See id.*, at ¶¶9, 12 (noting that several of the Defendants listed on Schedule A have simply redacted the Plaintiff's Mark or replaced it with a fictional brand on the images they have used to sell Counterfeit Guides).

Even in cases where the Defendants have few actual sales of Counterfeit Guides (or where Defendants "sell" Counterfeit Guides, but deliver no product at all), Defendants profit from their unauthorized use of the Plaintiff's IP by advertising the Counterfeit Guides broadly to increase consumer traffic to their illegal operations. *Id.*, at ¶13. By their actions, Defendants are creating a false association

in the minds of consumers between Defendants and Plaintiff. The entry of a temporary restraining order would serve to immediately stop Defendants from benefiting from their wrongful use of the Copyrighted Works and Mark and preserve the *status quo* until such time as a hearing can be held. *See generally* Ex. B; *see also Dell Inc. v. BelgiumDomains, LLC*, Case No. 07-22674, 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) (finding *ex parte* relief more compelling when Defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants).

**3. The Harm Caused by Defendants' Infringement of Plaintiff's Copyrighted Works Far Outweighs any Legitimate Interest Defendants Might Claim.**

Defendants have no legitimate interest in exploiting the Plaintiff's Copyrighted Works. On the other hand, Plaintiff has expended substantial time, money, and other resources to develop the quality, reputation, and goodwill associated with the HAMIEW brand and Copyrighted Works. *See* Complaint, at ¶¶11-13. Should Defendants be permitted to continue their trade in counterfeit goods, Plaintiff will suffer additional losses and damage to its reputation. *See WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 603 (S.D.N.Y. 2011) ("[I]t is axiomatic that an infringer of copyright cannot complain about the loss of ability to offer its infringing product."). Defendants will therefore suffer no legitimate hardship in the event a temporary restraining order is issued because Defendants have no right to engage in their present counterfeiting and infringement activities.

**4. The Focused, Limited TRO Requested by Plaintiff Serves the Public Interest.**

"The public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Fletcher's Original State Fair Corny Dogs, LLC v. Fletcher-Warner Holdings LLC*, 434 F. Supp. 3d 473, 497 (E.D. Tex. 2020). The public interest is also served by issuing an injunction because Plaintiff loses valuable incentives to continue to create programming and related merchandise if it continues to be deprived of (1) control over its content, (2) how and where the content gets distributed, and (3) potential revenue sources. In sum, protecting

Plaintiff's interests in the Copyrighted Works is consistent with, if not equivalent to, promoting the public interest. *See CBS Broad., Inc. v. EchoStar Communs. Corp.,* 265 F.3d 1193, 1198 (11th Cir. 2001) (declaring "the public interest lies with protecting the rights of copyright owners.").

**C. The Limited Equitable Relief Sought is Appropriate under the Circumstances.**

The Copyright Act authorizes courts to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. §502(a). In this Case, Plaintiff seeks a TRO to restrain Defendants from selling Counterfeit Guides; Defendants may continue to sell products that do not infringe Plaintiff's intellectual property rights.

**1. Entry of an Order immediately enjoining Defendants' unauthorized and unlawful use of Plaintiff's Copyrighted Works and the Mark is proper.**

Plaintiff requests an order requiring Defendants to immediately cease all use of the Copyrighted Works, or substantially similar marks or derivative works, including on or in connection with their webstores and online advertising of the Counterfeit Guides. As set forth above, such relief is necessary to stop the ongoing harm the Plaintiff's advertisement and sales of the Dietary Guides and, more broadly, the HAMIEW brand. Other courts within this Circuit, including the majority of cases including in Group Exhibit B attached hereto, have granted relief in similar cases involving the unauthorized use of intellectual property rights. *See* Group Ex. B; *see also PAAKline, LLC v. Dongguan Airuise Trading Co., Ltd.*, No. 1:22-cv-1082-LY, 2022 WL 18110060 (W.D. Tex. Nov. 29, 2022); *BVE Brands, LLC v. Yiwu Dingyi E-Commerce Co.*, No. 1:22-cv-278-RP, 2022 WL 5568332 (W.D. Tex. Apr. 21, 2022); *Chanel, Inc. v. Partnerships & Unincorporated Ass'n Identified in Schedule A*, No. H-12-2085, 2012 WL 3527047 (S.D. Tex. Aug. 14, 2012).

**2. Entry of an Order prohibiting transfer of the Seller IDs during the pendency of this action is appropriate and necessary.**

To preserve the *status quo*, Plaintiff seeks an order temporarily modifying control of and prohibiting Defendants from transferring use or control of the Seller IDs being used and controlled by

Defendants to other parties. Once they become aware of litigation against them, Defendants operating via the Internet can easily—and often do—change their ownership or modify e-commerce store account data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of the Seller IDs, and thereby thwart the courts' ability to grant meaningful relief. *See* Jones Aff., at ¶¶9, 11. Here, an interim order prohibiting Defendants from transferring their webstores operating under the Seller IDs poses no burden on them, preserves the *status quo*, and ensures that this Court, after fully hearing the merits of this action, will be able to afford Plaintiff full relief.

**3. Entry of an Order restraining Defendants from transferring their U.S.-based assets is appropriate.**

The Court should enter an order limiting the transfer of Defendants' unlawfully gained assets. Plaintiff has demonstrated above that it will likely succeed on the merits of its claims. As such, under the Copyright Act, Plaintiff will be entitled to an accounting and payment of the profits earned by Defendants throughout the course of their counterfeiting scheme. 17 U.S.C. §504.

Due to the deceptive nature of the counterfeiting business, and Defendants' deliberate violations of federal trademark laws, Plaintiff respectfully requests this Court grant additional *ex parte* relief, identifying payment accounts and restraining the transfer of all monies held or received by the Marketplaces and related financial institutions operated by or for the benefit of the Defendants. *See Animale Group Inc. v. Sunny's Perfume Inc.*, 256 Fed. Appx. 707 (5th Cir. 2007) (affirming district court's asset seizure as an equitable remedy in counterfeit enforcement action); *see also Prep Solutions, Ltd. v. Leicht*, No. 2:22-CV-00123, 2022 WL 1812298, at *2 (E.D. Tex. June 2, 2022) ("The Court can permissibly freeze assets to protect a plaintiff's equitable remedies – such as the equitable remedy of disgorgement, which is expressly authorized by the Copyright Act").

"A party seeking asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Id.* (citing *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009)). As alleged in the Complaint and supported by the Plaintiff's Verification of

the Complaint and the Jones Aff., Defendants are foreign counterfeiters operating from unknown locations generally outside this Court's jurisdiction. The ability of counterfeiters to practically eliminate evidentiary trails by conducting their businesses entirely over the Internet weighs heavily in favor of granting Plaintiff's requested relief. *See Levi Strauss & Co. v. Sunrise Int'l Trading*, 51 F.3d 982 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enter.*, 737 F. Supp. 1521 (S.D. Cal. 1989), *aff'd*, 970 F.2d 552 (9th Cir. 1992). Moreover, to provide complete equitable relief, courts have granted such orders without providing notice to the defendants. Where advance notice of an asset restraint is likely to cause a party to alienate the assets sought to be restrained, a temporary restraining order may be issued *ex parte*. *See F.T. Int'l Ltd v. Mason*, No. 00-cv-5004, 2000 WL 1514881, at n.1 (E.D. Pa. Oct. 11, 2000) (granting *ex parte* TRO restraining defendants' bank accounts upon finding that advance notice would likely have caused defendants to secret or alienate funds); *CSC Holdings, Inc. v. Greenleaf Elec., Inc.*, No. 99-cv-7249, 2000 WL 715601 (N.D. Ill. June 2, 2000) (granting *ex parte* TRO enjoining cable television pirates and restraining pirates' assets).

**IV. CONCLUSION**

In view of the foregoing, Plaintiff respectfully requests this Court grant its *ex parte* application and enter a temporary restraining order as to Defendants in the form submitted herewith and schedule a hearing on Plaintiff's Motion for a Preliminary Injunction before the expiration of the temporary restraining order.

Respectfully submitted,

By: /s/ Patrick M. Jones
One of the Attorneys for Plaintiff

**PMJ PLLC**

Patrick M. Jones *(Admitted Pro Hac Vice)*
1910 Pacific Ave.
Suite 2000-1066
Dallas, TX. 75201

and

7508 South 76th Drive
Laveen, AZ 85339
Tel: (312) 404-3225
Email: pmj@pmjpllc.com
Email: hamiewinfringement@pmjpllc.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 27th day of April, 2026, a copy of the foregoing Motion was served on the Marketplaces by electronic mail at the following addresses:

**Amazon**
Email: AmazonTROs@dwt.com

**eBay**
Email : TROs@ebay.com

**TikTok**
Email : legal@tiktok.com

Walmart
Email: ipinvest@walmart.com

By: /s/ Keelin Nguyen

## CERTIFICATE OF CONFERENCE

No defendant has appeared in this Case and, therefore, counsel states that he was unable to meet and confer with defendants regarding the relief requested herein pursuant to Local Rule 7(i).

By: /s/ Patrick M. Jones