**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

THI NHO DANG (d/b/a "HAMIEW"),        )
                                       )
   *Plaintiff,*                         )
                                       )
v.                                     )
                                       )      Case No. 26-405
THE INDIVIDUALS, PARTNERSHIPS          )
AND UNINCORPORATED                     )      Hon. Michael J. Truncale
ASSOCIATIONS IDENTIFIED ON             )
SCHEDULE A,                            )
                                       )
   *Defendants.*                        )

**SUPPLEMENTAL AFFIDAVIT OF PATRICK M. JONES IN SUPPORT OF PLAINTIFF'S MOTION FOR ORDER GRANTING PRELIMINARY INJUNCTION**

I, Patrick M. Jones, am over the age of 18 years and an attorney licensed to practice in Arizona and Illinois and admitted *pro hac vice* before this Court. If called on to testify under oath, I would testify consistently with the following:

1.      I am the Managing Member of PMJ PLLC, counsel to Plaintiff in the above-captioned case (the "Case").

2.      PMJ PLLC has represented approx. ten (10) plaintiffs in copyright and/or trademark infringement cases, as well as more than twenty (20) defendants in copyright and/or trademark infringement cases.

3.      I drafted the Complaint that was filed in the Case, as well as the Motion for Temporary Restraining Order, and Asset Restraint (Dkt. #10) (the "Motion for TRO").

4.      The Order granting the Motion for TRO expires on May 11, 2026 at 5:00 pm CST.

5.      The Court has set an evidentiary hearing on the preliminary injunction aspects of the Motion for TRO for May 12, 2026 at 4:00 pm CST.

6.      I reviewed the Plaintiffs' copyrights and trademark registered with the United States Patent

1

and Trademark Office.

7.      Prior to filing the Complaint, I reviewed the Evidence of Infringement (Dkt. #8), a copy of which was filed with this Court under seal, and confirmed that each of the Defendants listed on Schedule A advertised, offered for sale, and sold dietary guides that used Plaintiff's Copyrighted Works and, in some cases, the Mark.

8.      I also confirmed that Defendants accomplish their sales of counterfeit and infringing goods via the Internet through the use of Webstores and online advertising targeting consumers located in Texas.

9.      I accessed the webstores operated by the Defendants and confirmed that they targeted and were willing and able to sell to customers located in the State of Texas.

10.     I initiated "test purchases" of Counterfeit Goods sold by eleven (11) of the Defendants to confirm that the Defendants were distributing guides bearing counterfeits of, at least one of the Copyrighted Works and/or the Mark to customers located in Texas.

11.     In other infringement cases where I represented the plaintiff(s) or defendants, non-U.S. defendants have transferred assets out of U.S.-based accounts to accounts located overseas when they learned of litigation against them in a direct effort to frustrate rights-holders efforts to enforce their intellectual property rights.

12.     Individuals and entities, located primarily in China, coordinate their efforts in "cartels" with one individual or entity directing the identification, acquisition, and sale of "trending" products, as well as the collection and distribution of the proceeds of sales to members of the "cartel", essentially in the form of a general partnership.

13.     Defendants in "Schedule A" cases manipulate sales, advertising data, and online content to "re-create" reality and, at a minimum, make it exceedingly difficult for legitimate rights' owners to enforce any judgment for copyright infringement.

14.     In this Case, several of the Defendants listed on Schedule A have simply redacted the

Plaintiff's Mark or replaced it with a fictional brand on the images they have used to sell Counterfeit Guides.

15.    Even in cases where the Defendants have few actual sales of Counterfeit Guides, Defendants profit from their unauthorized use of the Plaintiff's intellectual property by advertising the Counterfeit Guides broadly to increase consumer traffic to their illegal operations.

16.    Once they become aware of litigation against them, defendants in "Schedule A" cases can easily—and often do—change their ownership or modify e-commerce store account data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of the Seller IDs, and thereby thwart the courts' ability to grant meaningful relief.

17.    I reviewed each of the webstores operated by the Defendants in an effort to discover the true identities and contract information for the Defendants without success; the Defendants use pseudonyms and, in some cases, virtual addresses to disguise their identity and location.

18.    Based on my prior experience with "Schedule A" cases, the only way to discover the actual identities and locations of the owners of webstores, such as those operated by the Defendants, is to request such information from the webstore hosts or "marketplaces", like Amazon, eBay, Walmart, and TikTok.

19.    The Marketplaces have individuals and departments dedicated to monitoring sellers on their platforms in an effort to limit the sale of counterfeit goods.

20.    On April 29, 2026, the Plaintiff served the online platforms, e.g., Amazon, eBay, TikTok, and Walmart, with a copy of the TRO, and requesting that each Defendant provide the following:

a.   The full name of the Owner of the webstore;
b.   The physical and email address of the Owner of the webstore;
c.   The balance of the account affiliated with the webstore;
d.   A list of any prior existing restraints on the account; and
e.   A list of any other financial accounts affiliated with the webstore, e.g., Chase, PayPal, etc.

21.    The email also requested the platforms to respond to this email to confirm receipt, and Cc: hamiewinfringement@pmjpllc.com; pmj@pmjpllc.com this email address with any communications

between you and the user(s) regarding this Case and the asset freeze.

22.     As of May 6, 2026, Amazon and Walmart had provided email addresses their customers listed on Schedule A; TikTok and eBay had not.

23.     Also on May 6, 2026, Plaintiff provided notice of the evidentiary hearing on the Motion for TRO to Defendants for whom Plaintiff had been provided emails addresses, and eBay and TikTok, with proposed exhibits for the hearing, and requested that eBay and TikTok forward the documents to their customers located on Schedule A.

Respectfully submitted,

By: /s/ Patrick M. Jones

4