IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THI NHO DANG. (d/b/a "HAMIEW"), | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:26-CV-00405 |
| | § | JUDGE MICHAEL J. TRUNCALE |
| THE INDIVIDUALS, PARTNERSHIPS | § | |
| AND UNINCORPORATED | § | |
| ASSOCIATIONS IDENTIFIED ON | § | |
| SCHEDULE A, | § | |
| | § | |
| *Defendants.* | § | |

## ORDER GRANTING PRELIMINARY INJUNCTION

Before the Court is Plaintiff Thi Nho Dang (d/b/a "HAMIEW") ("Dang")'s *Ex Parte* Motion for Entry of a Temporary Restraining Order, Preliminary Injunction, and Order Restraining the Transfer of Assets (the "Motion"). [Dkt. 10]. The Motion's request for a preliminary injunction is now ripe for review.

For the reasons stated below, the Motion is **GRANTED IN PART**.

## I.  BACKGROUND

This is a copyright and trademark infringement case. *See generally* [Dkt. 1]. Dang is an individual in Thai Binh, Vietnam. *Id.* at ¶ 9. Dang is the owner of all rights, title, and interest in intellectual property supporting the HAMIEW brand. *Id.* This case concerns HAMIEW's dietary guides. *Id.* Dang advertises, promotes, and distributes goods bearing and reproducing the HAMIEW trademarks through its Amazon.com-hosted webstores. *Id.* at ¶ 12.

The Defendants in this matter (Does 1–57) are individuals, business entities of unknown makeup, or unincorporated associations, each of whom, on information and belief, likely reside or operate in foreign jurisdictions. *Id.* at ¶ 10; *see* [Dkts. 6-2, 6-3, 6-4, 6-5, 6-6 (providing a list of 57

defendants)]. Allegedly, Defendants have and are currently "advertising, promoting, and selling Counterfeit Guides to consumers in" the Eastern District of Texas. *Id.* at ¶ 23. Dang alleges that Defendants have purposefully concealed their identities and the full scope of their infringing activities. *Id.* at ¶¶ 26–27. Dang never approved of the Defendants' sales, nor did it give them permission to use the HAMIEW rights. *Id.* at ¶ 22. Dang alleges that it has suffered and will continue to suffer irreparable harm from these knockoff transactions. *Id.* at ¶¶ 26–32.

On these facts, Dang brings claims for (1) copyright infringement under the Copyright Act (17 U.S.C. §§ 106(1), (2), (3), (5), and 501), (2) trademark counterfeiting and infringement under the Lanham Act (15 U.S.C. § 1114), (3) false designation of origin under the Lanham Act (15 U.S.C. § 1125(a)), (4) unfair competition under Texas common law, and (5) dilution under the Lanham Act (15 U.S.C. § 1125(c). *Id.* at ¶¶ 37–74. Dang files the present motion to obtain a preliminary injunction that prevents the Defendants from (1) engaging in further wrongful use of Dang's trademarks and copyrights and (2) hiding or transferring their assets, specifically funds, transmitted through all possible online marketplace payment providers, including but not limited to Amazon, eBay, TikTok, and Walmart. [Dkt. 10 at 2].

## II. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). A party seeking a preliminary injunction must establish four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that they will suffer irreparable harm absent injunctive relief; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not harm the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). "A preliminary injunction . . . should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Id.* Nevertheless, a movant "is not required to prove his

case in full at a preliminary injunction hearing." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1987) (quoting *Univ. of Tex. v. Comenisch*, 451 U.S. 390, 395 (1981)). The decision of whether to grant a preliminary injunction lies within the sound discretion of the district court. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982).

### III. DISCUSSION

The Plaintiff has a strong probability of success at trial on all of her claims.

### a. Substantive Requirements (Copyright Claim)

Dang has satisfied the substantive requirements as well. A plaintiff is likely to succeed on a copyright infringement claim if it establishes: (1) ownership in a valid copyright and (2) copying by the defendant. *See Lakedreams v. Taylor*, 932 F.2d 1103, 1007–08 (5th Cir. 1991) ("To establish 'ownership,' the plaintiff must prove that the material is original, that it can be copyrighted, and that [the plaintiff] has complied with statutory formalities."). Copying can be proven through direct evidence of copying or through circumstantial evidence demonstrating that the defendant had access to the copyrighted work and that the works are "probatively" similar. *Gen. Univ. Sys., Inc. v. Lee*, 379 F.3d 131, 141–42 (5th Cir. 2004). Access need not be shown where "the two works are so strikingly similar as to preclude the possibility of independent creation." *Id.* at 142.

As shown by the registrations with the U.S. Copyright Office, the rights to HAMIEW are wholly original and proprietary to Dang. *See* [Dkt. 1-1]. Dang never gave Defendants permission to use the Copyright Media. Dang has created and marketed its series and goods bearing the HAMIEW trademark and copyright, circumstantially establishing Defendants' access to the media. Further, from a basic side-by-side comparison, a layman would gather that the protected HAMIEW works and Defendants' media is not only probatively similar, but substantially similar. *Compare* [Dkt. 1-1 *with* Dkts. 6-2, 6-3, 6-4, 6-5, 6-6]. For these reasons, Dang is likely to succeed on the merits of the copyright infringement claim.

Courts in this circuit have found that "[w]hen a plaintiff seeks an injunction under the Copyright Act, the plaintiff establishes *a rebuttable presumption of irreparable harm* when the plaintiff shows that a valid copyright has been infringed." *MGE UPS Sys., Inc. v. Fakouri Elec. Eng'g*, No. CIV.A.4:04-CV-445-Y, 2004 WL 2187143, at *2 (N.D. Tex. Sept. 28, 2004) (emphasis added) (citing *Dallas Cowboy Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1187 (5th Cir. 1979)); *Sony/ATV Publ'g, LLC v. Marcos*, 651 F. App'x 482, 487 (6th Cir. 2016) ("In a copyright-infringement action a plaintiff establishes a rebuttable presumption of irreparable harm by demonstrating a likelihood of success on the merits."). Further, where a plaintiff proves a substantial likelihood of success on the merits of a copyright infringement claim, "a preliminary injunction should not be denied simply because plaintiffs can recover monetary damages[.]" *Olan Mills, Inc. v. Eckerd Drug of Tex., Inc.*, No. CA3-88-0333-D, 1988 WL 161314, at *2 (N.D. Tex. Dec. 14, 1998) (Fitzwater, J.).

The Defendants' infringing use of the HAMIEW rights have and continue to irreparably harm Dang by depriving Dang of the ability to control use and licensing of the media and by preventing Dang from enjoying the exclusive rights conferred by the Copyright Act. *See* 17 U.S.C. § 106. Such loss of control over the Masha the Bear rights is neither calculable nor precisely compensable, thus warranting an immediate halt to Defendants' infringing activities. Further, Dang has established a rebuttable presumption of irreparable harm by virtue of demonstrating a likelihood of success on the merits. As such, Dang has satisfied the "irreparable harm" factor.

Courts in this circuit have found for over 25 years that the balance of hardship supports protecting a plaintiff's copyright. *See, e.g., Olan Mills, Inc.*, 1988 WL 161314, at *3; *see also Worlds of Wonder, Inc. v. Veritel Learning Sys., Inc.*, 658 F. Supp. 351, 357 (N.D. Tex. 1986). Dang is entitled to protect the integrity of her intellectual property, and continues to suffer hardship as long as Defendants are using, reproducing, and displaying it. As infringers, Defendants are entitled to little

equitable consideration, for the only hardship they would face would be to simply cease their infringing conduct. Thus, the balance of equities tips decisively in Plaintiff's favor.

There is a public interest in preserving rights provided by federal copyright law. *Lakedreams*, 932 F.2d at 1110. Further, courts in this district have found that the public interest "is always served by requiring compliance with Congressional statutes . . . and by enjoining [infringement]." *Gibson Brands, Inc. v. Armadillo Distribution Enters., Inc.*, No. 4:19-CV-358, 2022 WL 3008501, at *4 (E.D. Tex. July 28, 2022) (Mazzant, J.) (citation omitted). The public interest factor thus also weighs in favor of an injunction because the public interest—and the Copyright Act itself—would be undermined if Defendants' infringing conduct is allowed to persist. Restraining Defendants will therefore advance the public interest by protecting copyrighted works and preserving the integrity of the Copyright Act.

### b. Substantive Requirements (Trademark Claim)

Dang has satisfied the substantive requirements here as well. "To recover on a claim of trademark infringement, a plaintiff must first show that the mark is legally protectable and must then establish infringement by showing a likelihood of confusion." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008); see also *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235–36 (5th Cir. 2010) (listing the same test). "Proof of registration of a service mark or trademark with the United States Patent and Trademark Office is prima facie evidence of the registrant's exclusive right to use the mark in commerce for the services specified in the registration." *Choice Hotels Int'l, Inc. v. Patel*, 940 F. Supp. 2d 532, 539 (S.D. Tex. 2013). "When a defendant uses a plaintiff's exact marks . . . a presumption of confusion exists." *Id.* at 540 (citing *Paulsson Geophysical Servs. v. Sigmar*, 529 F.3d 303, 310–11 (5th Cir. 2008)) (alteration added).

The HAMIEW mark is protectable: it has been registered on the Principal Register of the United States Patent and Trademark Office. [Dkt. 1-1 at 13]. The mark has become incontestable, meaning it is presumptively valid, subject to limited defenses not relevant here. See 15 U.S.C. § 1065;

*Am. Rice*, 518 F.3d at 330. Furthermore, the Dang has never given the Defendants the permission to use the HAMIEW mark. This satisfies the first element of the claim. As for the second element, it is apparent that the Defendants are using the Plaintiffs' exact marks. Having met both elements, the Dang has shown a likelihood of success on the merits for the trademark infringement claim. They are also likely to succeed as to their false designation of origin and common law unfair competition claims. See *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (Stevens, J., concurring) (discussing the federal courts are "in agreement that the test for liability [for false designation of origin] is likelihood of confusion") (alteration added); *PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F.Supp.2d 1213, 1217–18 (S.D. Fla. 2004) (finding federal trademark infringement and common law unfair competition all share the same test).

"The Lanham Act states that irreparable injury is presumed in cases of trademark infringement whenever there is a likelihood of confusion." *Totalcare Healthcare Servs., LLC v. TotalMD, LLC*, 643 F.Supp.3d 636, 649 (N.D. Tex. 2022) (Pittman, J.) (citing Pub. L. No. 116-260, § 221(a), 134 Stat. 1182, 2208 (December 27, 2020) (amending 15 U.S.C. § 1116(a); *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013) ("All that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion—injury is presumed."). "Even without the presumption of the Lanham Act, '[a] plaintiff's lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury, regardless of the actual quality of those goods or services.'" *Totalcare Healthcare*, 643 F.Supp.3d at 649 (quoting *Quantum Fitness Corp. v. Quantum Lifestyle Ctrs., LLC*, 83 F.Supp.2d 810, 831 (S.D. Tex. 1999)) (alteration in original).

The Defendants' infringing use of the HAMIEW mark has and continues to irreparably harm Dang by depriving her of the ability to control use and licensing of the media and by preventing the Plaintiffs from enjoying the exclusive rights conferred by their trademark. Such loss of control over the

HAMIEW mark is neither calculable nor precisely compensable, thus warranting an immediate halt to the Defendants' infringing activities. As such, the Dang has satisfied the "irreparable harm" factor.

Now for the balance of the equities. Dang is entitled to protect the integrity of her intellectual property, and it continues to suffer hardship as long as the Defendants are using, reproducing, and displaying it. As infringers, the Defendants are entitled to little equitable consideration, for the only hardship they would face would be to simply cease their infringing conduct. Thus, the balance of equities tips decisively in the Plaintiff's favor.

The fourth and final factor is the public interest. There is a public interest in preserving rights provided by federal trademark law. *Lakedreams*, 932 F.2d at 1110. Further, courts in this district have found that the public interest "is always served by requiring compliance with Congressional statutes . . . and by enjoining [infringement]." *Gibson Brands*, 2022 WL 3008501, at *4 (citation omitted). The public interest factor thus also weighs in favor of an injunction because the public interest—and the trademark laws themselves—would be undermined if the Defendants' infringing conduct is allowed to persist. Restraining the Defendants will therefore advance the public interest by protecting trademarked works and preserving the integrity of US trademark law.

### IV. CONCLUSION

For the reasons stated above, Plaintiff Dang's *Ex Parte* Motion for Entry of a Temporary Restraining Order, Preliminary Injunction, and Order Restraining the Transfer of Assets [Dkt. 10] is hereby **GRANTED IN PART**.

It is therefore **ORDERED** that:

1. Defendants, their successors, affiliates, servants, officers, agents, independent contractors, and employees, and anyone acting in active concert or participation with or at the behest or direction of any of the foregoing, be preliminarily enjoined from:

    a. Using, reproducing, displaying, or enabling others to use, reproduce, or display any

copies or derivative works based on Plaintiff's copyrighted works, including, without limitation, the photographs and video appearing in (Dkt. #1-1), other imitations of Plaintiff's Copyrighted Works, or works that otherwise infringe on Plaintiff's copyright or trademark registrations in the Copyrighted Works and the Mark;

b. (With the exception of Defendants Nos. 23–29 and 31 on Schedule A to the Complaint, [Dkt. 8-1]) moving, relocating, or otherwise disposing of any funds currently located in Defendants' online accounts, including, without limitation, from Amazon, eBay, Walmart, and TikTok;

c. Removing, destroying, or otherwise disposing of computer files, electronic files, business records, or documents relating to any of Defendants' webstores, websites, assets, operations, or relating in any way to the reproduction and display of the Copyrighted Works or the Mark; and

d. Engaging in any other activity that infringes on Plaintiff's rights in any manner.

2. Each Defendant, within 14 days after receiving notice of this Order, shall serve on Plaintiff a written report under oath providing: (a) their true name and physical address; (b) all websites and online marketplace accounts on any platform that they own and/or operate; and (c) the steps taken by each Defendant to comply with paragraphs 1(a)–(d) above.

3. Defendants (with the exception of Defendants Nos. 23–29 and 31 on Schedule A to the Complaint, [Dkt. 8-1]) and any persons in active concert or participation with them who have actual notice of this Order shall be restrained from transferring, disposing of, or secreting any money, stocks, or other assets of Defendants until further ordered by this Court.

4. All Marketplaces and their affiliates are ordered to, within two (2) business days of receipt of this Order, locate all accounts and funds connected to the Defendants identified on Schedule A

to the Complaint (with the exception of Defendants Nos. 23–29 and 31 on Schedule A to the Complaint, [Dkt. 8-1]) and block all money transfers and funds from being transferred by such Defendants until further ordered by this Court.

5. Plaintiff shall provide notice of this Preliminary Injunction to Defendants by sending an email to the email addresses provided for Defendants by third parties hosting Defendants' webstores, such as Amazon, eBay, TikTok, and Walmart, etc.; and to the email addresses of any legal counsel or representatives of the Defendants. Providing notice via email, along with any notice that Defendants receive from the Marketplaces, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of this Preliminary Injunction.

6. This Order shall apply to the Infringing Webstores, websites, and any other domain names properly brought to this Court's attention and verified by sworn declaration that verifies such new webstores or domain names are being used by Defendants for the purpose of infringing Plaintiff's copyright and trademark registrations identified in the Complaint.

**SIGNED this 26th day of May, 2026.**

Michael J. Truncale
United States District Judge